# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2015

Lyle W. Cayce
Clerk

No. 15-20197
Summary Calendar

MICHAEL D. VAN DEELEN,

       Plaintiff - Appellant

v.

JAMES CAIN; CURT DROUILLARD; L. S. SPENCER; PATRICIA
CRITTENDON; SUSAN MURPHY; JEREMY LEWIS; RONNIE
ANDERSON; STEVEN SMITH; RICK MANN; PAUL LANHAM; WILLIAM
PILKINGTON; GEORGAN REITMEIER; STEPHEN SZYMCZAK; KLEIN
INDEPENDENT SCHOOL DISTRICT; ELLEN SPALDING; 10 JOHN/JANE
DOES,

       Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-923

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:*

    A public school teacher who pushed a student and held him against a
locker subsequently had his teaching contract terminated.  He then filed this

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

*pro se* federal lawsuit seeking reinstatement, $1 million in compensatory damages, and punitive damages. He claims that he acted in self-defense and was set up to fail by school administrators, the school board, and an outside lawyer for the school district. For the reasons that follow, we affirm the district court's decision to dismiss his claims on the pleadings and refuse a third amendment of the complaint.

## I.

The following facts are drawn from plaintiff's second amended complaint. Michael Van Deelen was employed as a geometry teacher at Klein Forest High School in the Houston area. The students at Klein Forest, particularly those in Van Deelen's classes, were insubordinate, unruly, and verbally abusive. On several occasions, Van Deelen booted students from his class and told the school administration that he did not want them to return. His requests were not followed.

When he received no relief from administration, Van Deelen turned to the Klein Independent School District Police Department. He twice filed reports about his students with the police. In those reports, he noted the school administration's failure to deal with the students as requested. Administrators reprimanded him for these police reports, threatening that he would face termination if he involved the police again.

Van Deelen claims that the administration's repeated refusal to deal with the discipline problem in his classroom led to a "powder keg" environment, where students realized that they could abuse him with no repercussions. The powder keg exploded on February 12, 2014. According to Van Deelen, a student threatened to "stick him" and physically charged him. Van Deelen defended himself, pushing the student out of his classroom and across the hallway. He then held the student against a bank of lockers until help arrived.

He claims that Defendant Jeremy Lewis, an assistant principal who was aware of the disciplinary problems in Van Deelen's classes, was watching the encounter over video surveillance. He accuses Lewis and an associate principal, Defendant Susan Murphy, of doctoring the video to make it look like Van Deelen was the aggressor.

Van Deelen was put on administrative leave following the February 12th incident. The school board subsequently voted to terminate his contract at the end of the school year. The policy invoked by the school board indicates that Van Deelen's employment was "probationary." *See* Board Policy DFAB, *available at* http://pol.tasb.org/Policy/Download/595?filename=DFAB (LEGAL).pdf ("Probationary Contracts: Termination at End of Year").[1]

Van Deelen filed this lawsuit after multiple grievances and complaints with the school district proved unfruitful. The named defendants include Klein ISD; eight administrators at Klein Forest High School and Klein ISD (the Administrator Defendants); seven school board members (the School Board Defendants); and an outside lawyer who represented the district in connection with Van Deelen's termination. He attributes the following wrongful conduct to various defendants: ignoring his complaints of disruptive student behavior to create the "powder keg" in his classroom; watching on video monitors in order to catch the inevitable explosion; doctoring the video evidence to make Van Deelen look like the aggressor rather than the victim; destroying a tape recording of a meeting that vindicated his side of the story; seeking and obtaining the termination of his teaching contract; causing a false "assault by

---

[1] Although we do not venture outside the complaint when reviewing an order dismissing claims under Rule 12(b)(6), we can take notice of the subject matter and contents of the specific board policies cited by Van Deelen. *See* Fed. R. Evid. 201 (permitting courts "at any stage of the proceeding" to "judicially notice a fact that is not subject to reasonable dispute").

contact" criminal citation to issue against him; sending a false letter to the Texas Education Agency about his "improper contact with a student"; and threatening him with arrest if he did not return unspecified school records to the district.   On the basis of such conduct, Van Deelen brings a First Amendment retaliation claim; a Fourteenth Amendment substantive due process claim; conspiracy claims under state and federal law; an intentional infliction of emotional distress claim; a negligence claim; and a whistleblowing claim under Texas state law.

## II.

The district court dismissed Van Deelen's complaint for failure to state a claim.  We review its decision *de novo*.  Like the district court, we will accept Van Deelen's factual allegations at face value, but we will disregard legal conclusions, unwarranted inferences, and conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### A.     First Amendment Retaliation

In order to determine if Van Deelen had adequately stated a First Amendment retaliation claim, the district court divided his speech into two categories: reports of student misbehavior and employment grievances.  It dismissed claims premised on the former because Van Deelen reported student misbehavior in his capacity as a teacher and in furtherance of his work responsibilities, such that he was not engaging in citizen speech protected by the First Amendment.  It dismissed claims premised on the latter because the work grievances concerned Van Deelen's own employment status, which is not a matter of public concern necessary to ground a First Amendment retaliation claim.

Van Deelen's arguments in this appeal concern only his reports of student misbehavior.  On that issue, Van Deelan contends that the district

court erred in concluding that his reports fell within the scope of his official duties. His argument gets the law mostly right. He correctly points out that categorization of speech as either official or unofficial hinges on the circumstances of the employee's particular position and the details of the particular speech. Factors to be considered in the analysis include the scope of the employee's job responsibilities as indicated in policies or job descriptions created by the employer, *see Hurst v. Lee Cnty.*, 764 F.3d 480, 485 (5th Cir. 2014) (consulting sheriff's department's "media relations policy" in determining whether corrections officer spoke to reporter as an employee of the department); any statutory authority which assigns particular job responsibilities to the employee, *see Gibson v. Kilpatrick*, 773 F.3d 661 (5th Cir. 2014) (explaining that statutory job definition "can be instructive"); whether speech was "directed within the employee's chain of command," *see Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008); as well as evidence that the employee did or did not engage in certain activity as a result of his or her job, regardless of formal responsibility or authority, *see Garcetti v. Ceballos*, 547 U.S. 410, 424–25 (2006) (rejecting that "employers can restrict employees' rights by creating excessively broad job descriptions" because "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform" and "[t]he proper inquiry is a practical one"). What Van Deelen misses, however, is that common sense plays a role in the inquiry as well. Where context provides one and only one answer, the absence of documentary or statutory support does not require a court to ignore the obvious or accept the incredible. This is true even at the early stage of Rule 12(b)(6). *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But

where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (internal quotation marks, brackets, and citations omitted)).

Van Deelen alleges that he reported student misbehavior at least five separate times. On each occasion, Van Deelen was teaching class when one or more students acted out. His "reports" did not all take the same form. We begin with the easiest cases.

On at least four occasions, Van Deelen reported the students to Lewis, one of Klein Forest's assistant principals. In these reports, Van Deelen requested that the students be removed from his classroom. From the context and allegations alone, it is apparent that this speech was made in furtherance of Van Deelen's teaching obligations. His complaint concerned disruptive behavior in the classroom. He requested relief limited to the classroom environment. And his speech was directed to a member of the school's administration. *See Weintraub v. Bd. of Educ.*, 593 F.3d 196, 200 (2d Cir. 2010) ("Weintraub's speech challenging the school administration's decision to not discipline a student in his class was a 'means to fulfill,' and 'undertaken in the course of performing,' his primary employment responsibility of teaching." (citations omitted)).

Although we require no additional information to slot this speech along the employee-citizen continuum, our conclusion is bolstered by Sections 37.002 and 37.003 of the Texas Education Code—cited throughout Van Deelen's complaint—which formally recognizes the authority of a teacher to report misbehaving students to school administration and to express an opinion as to whether such students should be allowed back in the classroom.

Van Deelen's allegations are not limited to this up-the-chain reporting, however. He also filed at least two reports with the Klein ISD police department. In both reports, he complained not only about the particular student who had acted out, but also about how Lewis "repeatedly sent misbehaving and disruptive students back to class even though [Van Deelen] had requested that they not be allowed to return."

Van Deelen's briefing emphasizes these police reports, as if to argue that his decision to take his complaints to the police was enough to remove the speech from the ambit of his professional responsibilities and require consideration of whether the speech touched a matter of public concern. But given these particular factual allegations, such a conclusion would be misguided. The police in question were campus police, and the relief Van Deelen sought from this new audience is indistinguishable from the relief he sought from Lewis. As before, he hoped that the police would take action that would allow him to control *his* classroom environment. Nor is the speech protected because Van Deelen included a complaint that Lewis inadequately handled Van Deelen's prior requests for student discipline. Recitation that the problem has been ongoing and unaddressed does not change the character or import of the speech. *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 690, 694 (5th Cir. 2007) (per curiam) (holding that athletic director's memorandum to principal explaining how months-long improper administration of athletic funds impaired his ability to perform job-related tasks "was made in the course of performing [the plaintiff's] employment").

Van Deelen protests that it is inconsistent to find that activity which allegedly got him fired was activity required for his job.[2] But such an outcome

---

[2] Van Deelen's argument—like his complaint—assumes that he was fired for his speech, rather than for his physical run-in with a student. We suspect that the Defendants

is neither uncommon nor illogical. An employee can discharge a work responsibility inadequately; he can also be fired by caprice and mistake. The First Amendment is not automatically implicated in either scenario. *See Garcetti*, 547 U.S. at 420 ("[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'") (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)); *Blackburn v. City of Marshall*, 42 F.3d 925, 933 (5th Cir. 1995) ("[T]he Court in *Connick* recognized that a public employer enjoys wide latitude in the administration of its own affairs and underscored a reluctance to convert every workplace grievance into a constitutional claim.").

For these reasons, the district court did not err in dismissing Van Deelen's First Amendment retaliation claims.

### B.    Fourteenth Amendment Due Process

Perhaps in recognition of the flaws in his First Amendment retaliation claims, Van Deelen leads his briefing with his Fourteenth Amendment claims. But he then attempts to import First Amendment principles into those claims. When a specific constitutional provision controls, it is improper to analyze a claim as substantive due process. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994). Given our conclusion that Van Deelen cannot succeed on his First Amendment retaliation claim, he must articulate some basis other than speech interests for liability under the Fourteenth Amendment.

The only other basis alleged is that Defendants' actions amounted to "abusive, irrational or malicious abuse of government power that shocks the conscience." As described above, Van Deelen alleges a series of fantastic actions undertaken by various defendants. He asserts that these actions were

---

would tell a different story. But they opted to move for dismissal of Van Deelen's claims rather than answer the complaint, which was their right.

undertaken as part of a concerted effort to fire him or pressure him into quitting.[3]

The district court dismissed Van Deelen's due process claims because the conduct alleged was not "so brutal, egregious, outrageous, or violative of the decencies of civilized conduct as to rise to the level required to shock the conscience." This statement of the standard for substantive due process claims comes from our decision in *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867–68 (5th Cir. 2012). And we agree with the district court that Van Deelen's allegations, which acknowledge that he assaulted one of his students though he tries to justify that, do not reach this high bar. *See id.* at 868 (explaining that even bad faith violations of state law do not suffice to establish a substantive due process violation).

## C.    State Law Claims

In addition to his federal constitutional claims, Van Deelen brings four state law claims against various defendants: conspiracy,[4] intentional infliction of emotional distress (IIED), negligence, and whistleblowing. Van Deelen's conspiracy and whistleblowing claims are not viable under Texas law. We affirm the district court's dismissal of those claims, for the reasons given in its order. Intervening case law requires that we address the IIED and negligence

---

[3] Van Deelen also suggests that Defendants engaged in this conduct so that he would suffer bodily harm at the hands of his unruly students. He refers to this theory as the "state-created danger" theory and faults the district court for not addressing it. There are any number of flaws in his argument, not least of which is that he never actually suffered any bodily harm. In any event, we can and do rely upon the point that we have never recognized the viability of the "state-created danger" theory, *see Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012), and Van Deelen's allegations do not prompt us to do so now.

[4] Van Deelen also asserted a federal conspiracy claim. With no "actual deprivation of constitutional rights," his federal conspiracy claim is unsupportable. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).

claims against the Administrator and Board Member Defendants in more depth.[5]

The district court dismissed the negligence and IIED claims against the Administrators and Board Member Defendants, pursuant to the election of remedies provision of the Texas Tort Claims Act (TTCA). The election of remedies scheme provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code § 101.106(a). It also permits the governmental unit to move for "immediate[]" dismissal of its employees when the lawsuit names both the governmental unit and individual employees. *Id.* § 101.106(e).

Necessary to the district court's dismissal of the TTCA claims was its conclusion that the Administrator and Board Member Defendants are "employees of Klein ISD" under the Act. Defendants note on appeal that our intervening decision in *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400 (5th Cir. 2015), may have implications for the School Board Defendants. We begin with the impact of *Gil Ramirez*.

1. *The School Board Defendants*

*Gil Ramirez* dealt with the applicability of the TTCA's definition of "employee" to school board members. We acknowledged that the Act's definition, on its face, did not extend to school board members, because they are neither in the district's "paid service" nor subject to the district's "right to control." 786 F.3d at 416 (citing Tex. Civ. Prac. & Rem. Code § 101.001(2)).

---

[5] Van Deelen does not appeal the district court's dismissal of the IIED claim against the district's outside counsel on the ground that the alleged conduct was not outrageous.

We then addressed the argument that the Act should be construed as consistent with definitions of "employee" found in other, context-specific Texas statutes. The argument stemmed from a 2011 Texas Supreme Court case, which held that a medical resident who was neither paid by nor controlled by the governmental entity could nonetheless be an employee for purposes of the TTCA pursuant to a Texas Health and Safety Code provision designating "medical residents as employees 'for purposes of determining liability.'" *Id.* (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 374 (Tex. 2011)). Relying on this reasoning, the school board defendant in *Gil Ramirez* invoked provisions of the Texas Education Code including school board members in the umbrella of "employees" entitled to professional immunity. *See id.* (citing Tex. Educ. Code §§ 22.051, 22.0511).

We rejected the defendant's argument in *Gil Ramirez* because the specific actions that he allegedly engaged in would not fall within the bounds of the Education Code provisions:

> But even if some "employees" under these Education Code provisions might fall within the scope of *Franka*, Marshall does not. The same Education Code provision limits personal liability "for any act *that is incident to or within the scope of the duties* of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee[.]" Tex. Educ. Code § 22.0511 (emphasis added). Marshall is not alleged to have been acting "within the scope" of his duties. To the contrary, bribery and peddling influence are not within the scope of a trustee's duty.

786 F.3d at 416–17. The allegations in this case present a different situation. Van Deleen complains that the School Board Defendants refused to hear two employee grievances and voted on his termination without allowing him to make an oral presentation. We note that the grievances were filed under an

inapplicable board policy,[6] and board policy gave Van Deelen no right to speak on his own behalf before or after his probationary contract was terminated.[7] It is clear that the School Board Defendants, exercising their "judgment" and "discretion" in deciding whether to entertain Van Deelen's grievances or permit him to address the board about the proposed termination of his probationary employment, were acting as "employees" of the school district pursuant to Sections 22.051(5) and 22.0511(a) of the Texas Education Code.

This does not resolve the applicability of the TTCA's definition of employee to the School Board Defendants, however. *Franka* provides some basis for concluding that the Texas Supreme Court would import the context-specific definition of employee found in Section 22.051 of the Texas Education Code to the generic definition found in Section 101.001(2) of the TTCA. But even if Texas law does not allow for such importation, Section 22.0511 of the Education Code itself provides that the School Board Defendants are entitled to professional immunity on Van Deelen's state law claims. *See* Tex. Educ. Code § 22.0511(a) ("A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in

---

[6] Van Deelen's grievances were filed pursuant to Board Policy DIA and complained of "retaliation" for his reports of student misbehavior and for grieving his suspension. But Board Policy DIA prohibits a very specific form of retaliation: that which follows a claim about "discrimination or harassment" on the basis of certain protected characteristics (such as race), or after supporting such a claim. *See* Board Policy DIA, *available at* http://pol.tasb.org/Policy/Download/595?filename=DIA(LOCAL).pdf ("Employee Welfare: Freedom from Discrimination, Harassment, and Retaliation").

[7] Board Policy DFAB provides that the board may terminate a probationary contract at the end of its stated term if it "serve[s] the best interests of the District." It entitles the affected teacher to notice only after the fact: "The Board shall give the employee notice of its decision to terminate the employment not later than the tenth day before the last day of instruction required under the contract." It does not provide any right to pretermination hearing, and it explicitly denies the employee any right to appeal.

which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students."). Because this alternate grounds for dismissal is apparent on the face of the complaint, we find that the district court did not err in dismissing the negligence and IIED claims against the School Board Defendants.

2.     *The Administrator Defendants*

There is no question that the Administrator Defendants are "employees" of Klein ISD under the TTCA. The district court held that the state law tort claims against them had to be dismissed because Van Deelen's original complaint also named Klein ISD as a defendant, and Section 101.106 of the Texas Civil Practice and Remedies Code makes this an "irrevocable election" to proceed against the district rather than the individual employees.

Van Deelen protests the unfairness of this result. He characterizes his inclusion of Klein ISD in the negligence claim in his original and first amended complaints as a "pleading mistake." The record indicates otherwise. The negligence claim in these complaints explicitly attributed six separate legal duties to "Klein ISD." Van Deelen also asserts that Defendants permitted him to "correct" the mistake by not opposing his second amended complaint. Again, he misstates the record. Defendants opposed amendment of the state law tort claims as futile due to the Act's election of remedies. They also filed simultaneously a motion to dismiss which invoked the election of remedies. The district court allowed Van Deelen to amend his complaint without ruling on Defendants' motion to dismiss.

Finally, Van Deelen claims that his amended pleading, which dropped the district from the negligence claim, superseded all previous versions of his complaint. In other words, he asserts that the amendment mooted Defendants' attempt to enforce the TTCA election-of-remedies provision. But no amended

pleading can moot his initial election, which must be and was made "at the outset" of the litigation. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008) (Section 101.106 "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery").

### III.

Van Deelen requested leave to amend in his oppositions to Defendants' motions to dismiss. The requests consisted of a single paragraph. He did not explain what new factual allegations he could offer that would address the deficiencies in his complaint. As noted by appellees, a "bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal quotation and citation omitted). The district court entertained the motion, however, and denied leave on the basis of futility and undue prejudice to the Defendants, who collectively had moved for dismissal in five separate motions to dismiss (three had been mooted by prior amendments). In denying Van Deelen a fourth opportunity to plead, the district court did not abuse its discretion.

### IV.

For these reasons, the judgment below is AFFIRMED.